# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

GWENDOLYN N. GREENWADE,

     Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,

     Defendant.

No.  C18-119-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.   INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge.  Doc. No. 23.   Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Gwendolyn Greenwade's application for disability insurance (DIB) benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et. seq., and for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et. seq.  Greenwade has filed timely objections to the R&R. Doc. No. 24.  The background is set forth in the R&R and is repeated herein only to the extent necessary.

## II.   APPLICABLE STANDARDS

### A.   *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive  . . .").  "Substantial

evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817,

822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.   *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Greenwade protectively filed an application for DIB and SSI benefits on October 19, 2015, alleging an onset date of October 1, 2014, due to bipolar with psychosis, anxiety, depression and anger. Doc. No. 23 at 2 (citing AR 16, 66, 78). Her application was denied initially and on reconsideration. *Id.* at 2–3 (citing AR 66–89, 92–113). She requested a hearing before an ALJ and a video hearing was held on December 13, 2017. *Id.* at 3 (citing AR 34). At the hearing, Greenwade and a vocational expert (VE) testified. *Id.* at 4 (citing AR 34–35). After Greenwade's application was denied on reconsideration in February 2016, but before her hearing in December 2017, Greenwade sought treatment for abdominal pain, back pain, headaches, left-sided chest pain, hand swelling, muscle pain and joint pain, resulting in a fibromyalgia diagnosis. *Id.* at 3–4 (citing AR 524, 561, 576, 579, 595, 637, 862, 873, 959, 1007, 1036–37, 1049). Greenwade raised these physical health issues at the hearing before the ALJ. *See* AR 357–58.

On January 18, 2018, the ALJ issued a written opinion finding Greenwade not disabled. Doc. No. 23 at 4 (citing AR 16–28). At Step Two of the sequential analysis, the ALJ concluded that Greenwade suffers from the following severe impairments: depressive disorder, bipolar disorder with psychotic features, generalized anxiety disorder, impulse control disorder and a history of substance abuse disorder (cocaine). *Id.* (citing AR 19). The ALJ recognized that Greenwade has complained about physical impairments, including fibromyalgia and back pain, but determined that her physical impairments are not severe because they did "not have the requisite limiting effects on [Greenwade's] ability to perform basic work activities." *Id.* (quoting AR 19–20). At

Step Three, the ALJ determined that Greenwade's impairments do not meet Listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). *Id.* at 4–5 (citing AR 20–22). In connection with that analysis, the ALJ determined that Greenwade suffers only moderate limitations in maintaining concentration, persistence or pace and interacting with others. *Id.* at 5 (citing AR 21). The ALJ then concluded Greenwade has the following residual functional capacity (RFC):

> [Greenwade] has the [RFC] to perform a full range of work at all exertional levels but with nonexertional limitations. [Greenwade] cannot climb ladders, ropes, or scaffolds; can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery; and cannot operate a motor vehicle as part of the work duties. She is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line) and is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes. She is limited to occasional and superficial interaction with supervisors; is limited to occasional transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should largely deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

*Id.* (quoting AR 22).

In formulating the RFC, the ALJ considered the VE's testimony, treatment records, Greenwade's subjective complaints, a third-party function report authored by Greenwade's live-in boyfriend and reports authored by two state agency consulting psychologists, Russel Lark, Ph.D. and Mark Becker, Ph.D. AR 22–26. However, the ALJ discounted Greenwade's subjective complaints and her boyfriend's report, finding that statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 23, 26. At Steps Four and Five, the ALJ then concluded that Greenwade has no past relevant work but can perform jobs available in significant numbers in the

national economy, including hand packager, cleaner/housekeeper, document preparer, scrap separator or page.  Doc. No. 23 at 5 (citing AR 27–28).

The Appeals Council denied Greenwade's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id.* (citing AR 7–9).  Greenwade then filed a timely complaint in this court seeking judicial review.  *Id.* (citing Doc. No. 4).  She argues the ALJ erred in: (1) failing to include fibromyalgia as a severe impairment at Step Two, (2) failing to analyze Listings 1.04 (disorders of the spine) or 12.15 (trauma- and stressor-related disorders) at Step Three, (3) discounting her subjective statements about her limitations, (4) discounting her boyfriend's third-party function report, (5) not including in her RFC a limitation related to work absences due to medical treatment, (6) not including in her RFC a limitation that captures her moderate limitations in concentration, persistence or pace and (7) failing to resolve inconsistencies between the VE's testimony and the Dictionary of Occupational Titles (DOT) and Department of Labor's Bureau of Labor Statistics.[1]  *Id.* at 6–7.

Judge Mahoney first addressed whether substantial evidence supports the ALJ's decision that Greenwade's fibromyalgia is not a severe impairment.  *Id.* at 7–9.  The ALJ recognized that Greenwade was diagnosed with fibromyalgia but found that it does not cause her more than minimal functional limitations.  *Id.* at 7 (citing AR 19–20).  The ALJ noted that Greenwade alleged disability beginning October 2014, but she did not allege any physical impairments or limitations in her initial disability application in October 2015 or when seeking reconsideration in early 2016.  *Id.* (citing AR 19).  The ALJ also noted that Greenwade sought treatment for abdominal and back pain in 2015 and beyond but concluded the pain was intermittent in nature.  *Id.* at 8 (citing AR 19,

---

[1] I agree with Judge Mahoney that Greenwade's brief is disorganized and makes it difficult to discern what issues she raises.  I also agree with Judge Mahoney that the above issues are all the issues Greenwade has presented.  To the extent Greenwade raised other issues not mentioned above, she did not object to the R&R on those issues and I find no clear error in Judge Mahoney's finding that substantial evidence supports the ALJ's decision.

433, 461, 595, 634, 637, 650, 700, 715, 746, 1049, 1073).  Judge Mahoney observed that Greenwade sought frequent treatment from April to June 2016 for swollen hands, joint pain, back pain and/or leg pain, but after June 2016 the frequency of Greenwade's reports lessened and became intermittent.  *Id.* (citing AR 500, 591, 607, 610, 618, 621, 632, 786, 796, 805, 822, 826–27, 833, 835, 844–45, 849, 1023–24, 1039).  Judge Mahoney pointed out that Greenwade did not raise these complaints at appointments from October 2016 to September 2017.  *Id.* (citing AR 514, 573–74, 578, 770, 780, 864, 911, 928, 961, 977).

The ALJ also noted that Greenwade does not take prescription pain-relieving medication.  *Id.* at 9 (citing AR 20, 43).  Judge Mahoney concluded that substantial evidence on the record as a whole supports the ALJ's finding that Greenwade's fibromyalgia causes no more than minimal limitations based on her failure to allege disability due to physical limitations, the intermittent treatment she has sought and her lack of prescribed pain medications.  *Id.*

Judge Mahoney next found that the ALJ did not err at Step Three in failing to address whether Greenwade's impairments met Listing 1.04 (disorders of the spine).  *Id.* at 11–12.  The ALJ found that Greenwade did not suffer from severe back pain.  *Id.* at 11.  Thus, Judge Mahoney concluded the ALJ was not required to address Listings related to back pain.  *Id.*  Judge Mahoney also addressed whether the ALJ should have assessed Greenwade's back pain as a severe impairment at Step Two.  *Id.* at 12.  As with fibromyalgia, Greenwade cites to treatment records from April to August 2016 in arguing her back pain meets Listing 1.04.  *Id.*  Judge Mahoney concluded that substantial evidence supports the ALJ's finding that Greenwade does not suffer from severe back pain because she did not allege disability based on back pain and treatment records outside of April to August 2016 demonstrate intermittent and infrequent complaints about back pain.  *Id.*

Judge Mahoney also found that the ALJ did not err in not addressing Listing 12.15 (trauma- and stressor-related disorders) at Step Three.  *Id.*  Judge Mahoney noted that even if the ALJ would have addressed Listing 12.15, he would have found Greenwade's

impairments did not meet that listing because it requires criteria that are present in the listings the ALJ addressed and determined Greenwade did not meet. *Id.* Judge Mahoney further concluded that substantial evidence supports the ALJ's determination at Step Three that Greenwade suffers only a moderate limitation in interacting with others. *Id.* at 13. Judge Mahoney pointed out that the vast majority of Greenwade's treatment records reflect that psychiatric examinations were normal, she denied suffering from mental health symptoms and her symptoms improved with medication. *Id.*

Next, Judge Mahoney addressed the weight the ALJ assigned to Greenwade's subjective statements about her mental impairments. *Id.* Judge Mahoney found that substantial evidence supports the ALJ's decision to discount those subjective complaints. *Id.* at 14. Judge Mahoney noted that the ALJ considered significant gaps in Greenwade's mental health treatment history, missed mental health appointments, intermittent medication compliance, normal mental health examinations, denials of mental health issues while seeking treatment for physical issues and activities of daily living in discounting her subjective complaints. *Id.* at 14–16 (citing AR 23–26).

Judge Mahoney also observed that the ALJ considered Greenwade's reasons for failing to attend appointments or take medications. *Id.* at 16 (citing AR 25). Greenwade explained she did not attend appointments or take medication because she was unsure if doctors would listen to her, had anxiety about getting into a car and ran out of medications when she missed appointments. *Id.* (citing AR 51–56). Judge Mahoney found that substantial evidence supports the ALJ's determination that Greenwade's failure to attend appointments and take medication was unjustified. *Id.* Judge Mahoney considered that Greenwade did not call to cancel appointments and did not explain her reasons for missing appointments either by phone or at her next appointment. *Id.* She noted that the ALJ reasoned that if Greenwade's absences were due to mental health issues, she likely would have explained that to her mental health providers. *Id.* (citing AR 25). Judge Mahoney also noted (as did the ALJ) that (1) Greenwade attended numerous other appointments for her physical health issues close in time to the appointments she missed and (2) during

those appointments she did not complain of mental health issues and her providers observed normal mood and affect. *Id.* (citing AR 25, 522, 581, 592, 595, 607, 620, 768, 865, 912, 962, 978, 993–94, 1026–27, 1041).

Judge Mahoney further concluded that substantial evidence supports the ALJ's decision to discount Greenwade's boyfriend's third-party function report. *Id.* at 17. Judge Mahoney found the ALJ correctly noted that Greenwade's boyfriend is neither a medical professional nor a neutral, unbiased source. *Id.* (citing AR 26). The ALJ also stressed that the limitations described by Greenwade's boyfriend, similar to Greenwade's statements, are not supported by the treatment records. *Id.* For the same reasons Judge Mahoney found that substantial evidence supports the ALJ's decision to discount Greenwade's statements, Judge Mahoney concluded that substantial evidences supports the ALJ's decision to discount her boyfriend's statements. *Id.*

Next, Judge Mahoney found that the ALJ did not err in not including a limitation in Greenwade's RFC related to work absences. *Id.* at 18–20. Greenwade argued she would have to miss work at least one or two times a month for medical appointments because she had at least 32 visits to providers from June 2014 to December 2015. *Id.* at 18 (citing Doc. No. 19 at 14–16). Judge Mahoney rejected this argument and explained that numerous district courts in the Eighth Circuit have rejected similar arguments. *Id.* Judge Mahoney noted that just because an individual requires regular medical appointments, this does not necessarily mean each appointment must be scheduled during work hours and consume an entire workday. *Id.* Further, Judge Mahoney explained that much of the treatment Greenwade sought was unrelated to her mental health conditions, fibromyalgia or back pain, which are the impairments she alleges cause her to be disabled. *Id.* at 19. Judge Mahoney also noted that the treatment records reflect long gaps in treatment for her mental health conditions, fibromyalgia and back pain. *Id.*

Judge Mahoney then addressed Greenwade's argument that her RFC does not account for the ALJ's finding of moderation limitations in concentration, persistence or pace. *Id.* at 20–21. Judge Mahoney noted that the RFC assessment, and the ALJ's

hypothetical to the VE, limited Greenwade to simple and routine tasks, performed in a work environment free of fast-paced production requirements. *Id.* at 21 (citing AR 22, 58). Judge Mahoney found that this adequately accounted for the ALJ's Step Three finding of moderation limitations in concentration, persistence or pace. *Id.*

Finally, Judge Mahoney addressed the multiple alleged inconsistences between the VE's testimony and the DOT. *Id.* at 21–26. Greenwade argued that her RFC limited her to simple and routine tasks and as a result she could not perform jobs that the DOT defines as having a reasoning level of two or three. *Id.* at 22. Judge Mahoney explained that the Eighth Circuit has rejected this argument as it relates to level two reasoning, although it is unclear whether the same is true for positions that require level three reasoning. *Id.* at 23. Judge Mahoney concluded that any error the ALJ committed in finding Greenwade could work a level three reasoning job was harmless because the ALJ identified four jobs Greenwade can perform that require level two reasoning, or less, and those jobs exist in significant numbers in the national economy. *Id.*

Greenwade argued that other parts of her RFC assessment conflict with the DOT. *Id.* at 24–25. Judge Mahoney found that none of the alleged conflicts actually existed. *Id.* Greenwade also argued that her RFC assessment conflicts with several publications from the Department of Labor's Bureau of Labor Statistics about jobs the VE testified that she could perform. *Id.* at 26. Judge Mahoney explained that the ALJ is required only to resolve apparent conflicts between the VE's testimony and the DOT, not other government publications. *Id.* In conclusion, Judge Mahoney found the ALJ did not err in relying on the VE's testimony that Greenwade could work as a hand packager, housekeeper, scrap separator and page, and that there are a significant number of these positions in the national economy. *Id.*

## IV. DISCUSSION

Greenwade makes two objections to Judge Mahoney's R&R. First, she argues that the ALJ erred in failing to include a limitation in the RFC assessment reflecting that

she would be absent from work more than once a month due to medical appointments. Second, she argues the ALJ erred in failing to include a limitation in the RFC assessment and hypothetical question to the VE addressing her moderate limitations in concentration, persistence or pace. I will consider both of these arguments.

## A.    *Work Absences Due to Medical Treatment*

Greenwade argues that the ALJ erred by failing to include a limitation in her RFC reflecting that she would miss work more than once a month for medical appointments. Doc. No. 24 at 1. She bases this argument on the fact that she sought medical treatment at least 32 times from June 2014 to December 2015, averaging 1.7 visits a month. *Id.* She further argues that the cases Judge Mahoney cited that rejecting similar arguments are distinguishable because the ALJs in those cases specifically addressed the claimant's purported need for an absenteeism limitation, which the ALJ did not do here. *Id.* Greenwade also argues that Judge Mahoney incorrectly found that the record does not support frequent medical visits in part because of gaps in treatment. *Id.* at 2. She argues Judge Mahoney and the ALJ failed to account for the fact that Greenwade missed many appointments due to her fear of leaving her house and her diagnoses of schizoaffective disorder, generalized anxiety disorder, social phobia and panic disorder with agoraphobia. *Id.* (citing AR 448).

As Judge Mahoney explained, many district courts in this circuit have rejected Greenwade's argument that because she has attended many treatment appointments, her RFC must contain a limitation that she will miss work more than once a month. *See Timms v. Saul*, No. C18-1653, 2020 WL 247970, at *4 (E.D. Mo. Jan. 16, 2020); *Lane v. Berryhill*, No. C17-02393, 2019 WL 952069, at *5 (E.D. Mo. Feb. 27, 2019); *Lara v. Berryhill*, No. C16-00564, 2018 WL 1744534, at *3 (E.D. Mo. Apr. 11, 2018); *Miller v. Berryhill*, No. C16-01292, 2017 WL 3642035, at *7 (E.D. Mo. Aug. 24, 2017); *Penney v. Berryhill*, No. C16-2097-LRR, 2017 WL 3301228, at *8 (N.D. Iowa July 11, 2017), *report and recommendation adopted*, 2017 WL 3299392 (Aug. 2, 2017) (clear-

error review); *Jeffries v. Berryhill*, No. C16-18, 2017 WL 365439, at *7 (E.D. Mo. Jan. 25, 2017); *Morin v. Colvin*, No. C14-000769, 2015 WL 4928461, at *9 (W.D. Mo. Aug. 18, 2015); *Kittelson v. Colvin*, No. C12-0094, 2013 WL 2444030, at *12 (N.D. Iowa June 5, 2013); *Assel v. Astrue*, No. C09-00931, 2010 WL 4628926, at *6 (W.D. Mo. Nov. 5, 2010); *Engel v. Astrue*, No. C09-00941, 2009 WL 2230921, at *4 (D.S.D. July 24, 2009); *see also Cindy E. v. Berryhill*, No. C18-5362, 2019 WL 3417087, at *5 (W.D. Wash. Feb. 6, 2019); *Cherkaoui v. Commissioner*, 678 F. App'x 902, 904 (11th Cir. 2017) (per curiam), *Swafford v. Commissioner*, No. C12-19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013); *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000).

One rationale underlying many of these decisions is that medical appointments do not necessarily have to be scheduled during work hours or require the claimant to miss an entire day of work. *Timms*, 2020 WL 247970, at *4; *Lara*, 2018 WL 1744534, at *3; *Penney*, 2017 WL 3301228, at *8; *Jeffries*, 2017 WL 365439, at *6; *Morin*, 2015 WL 4928461, at *9; *Kittelson*, 2013 WL 2444030, at *11; *Assel*, 2010 WL 4628926, at *6; *Engel*, 2009 WL 2230921, at *4; *Cindy E.*, 2019 WL 3417087, at *5; *Cherkaoui*, 678 F. App'x at 904; *Swafford*, 2013 WL 1196590, at *1; *Barnett*, 231 F.3d at 691. Courts also reason that medical opinion evidence on whether the claimant's future appointments will be medically necessary and frequent is often necessary. *Timms*, 2020 WL 247970, at *4; *Lara*, 2018 WL 1744534, at *3; *Kittelson*, 2013 WL 2444030, at *11; *Engel*, 2009 WL 2230921, at *4; *Cindy E.*, 2019 WL 3417087, at *5; *Swafford*, 2013 WL 1196590, at *1. Courts further point out that medical appointments are not always related to the claimant's severe impairments. *Assel*, 2010 WL 4628926, at *6; *Cherkaoui*, 678 F. App'x at 904; *Barnett*, 231 F.3d at 691.

Here, Greenwade presents no evidence that her medical appointments and other unscheduled treatment visits would have to occur during her work hours and require her to miss an entire day of work. She also presents no medical opinion that future appointments are medically necessary and will be frequent. Further, a vast majority of Greenwade's past medical appointments are unrelated to her mental health conditions,

which are the only severe impairments found by the ALJ.[2]  Greenwade cites to thirty-two appointments from June 2014 to December 2015 in arguing she would need to miss work more than once a month for medical treatment.  Doc. No. 24 at 1.  However, during that time period, Greenwade went to only two therapy sessions, on September 16 and October 7, 2015 (AR 415–19), complained of mental health symptoms at two appointments with her primacy care provider, on November 18 and 24, 2015 (AR 433–36), and had two mental health treatment appointments on November 25 and December 16, 2015 (AR 447–52).  After 2015, she had mental health treatment appointments on January 18, 2016 (AR 455–56), December 5, 2016 (AR 760–61), February 17, 2017 (AR 759), March 31, 2017 (AR 759), June 2, 2017 (AR 758), August 18, 2017 (AR 758) and October 6, 2017 (AR 757).  Therefore, from October 1, 2014, the alleged onset date, to October 2017, Greenwade only had 13 appointments related to mental health.

Greenwade argues that there should have been more mental health treatment appointments during this time period, but she missed appointments due to her fear of leaving the house and related mental health conditions.  Doc. No. 24 at 2.  However, the record shows only seven missed mental health appointments from October 1, 2014, to October 2017.  AR 420, 489, 503, 758, 761.  Further, the ALJ correctly noted that Greenwade did not call to cancel appointments, nor did she explain her reasons for missing appointments (either by phone or at her next appointment).  The ALJ reasoned that if her absences were due to mental health issues, she likely would have reported this to her mental health providers.  AR 25.  The ALJ also correctly pointed out that

---

[2] Greenwade does not object to Judge Mahoney's finding that substantial evidence supports the ALJ's conclusion that her fibromyalgia and back pain are not severe impairments.  Doc. No. 23 at 9, 12.  I have conducted a clear error review of Judge Mahoney's finding on these issues and find no error.  Even if there was not substantial evidence in support of the ALJ's conclusion, Greenwade sought treatment for fibromyalgia and back pain beginning only in February 2016, sought treatment consistently until June 2016, and after that only intermittently. *See, e.g.*, AR 591–94, 618–26, 770–76, 786–92, 1048–55.  Many of the medical appointments she cites to were unrelated to mental health, fibromyalgia or back pain.  Therefore, Greenwade's treatment records do not indicate frequent appointments for severe impairments to the extent she claims.

Greenwade attended numerous other appointments for her physical health before and after her missed appointments and did not complain about or demonstrate mental health symptoms. AR 25; *see also* AR 420, 433–35 (Greenwade missed a mental health appointment on November 25, 2015, but presented at the hospital for medical treatment on November 18 and 24); AR 489, 591–94, 815–22, 823–27 (a physician withdrew care from Greenwade on June 26, 2016, because she repeatedly failed to keep appointments, but Greenwade presented at the hospital for medical treatment on June 3, 19 and 23); AR 579–82, 761, 958–70 (Greenwade did not attend an appointment with her psychiatrist on January 16, 2017, but presented at the hospital for medical treatment on January 13 and 18).

Substantial evidence supports the ALJ's decision to discount Greenwade's explanation for the gaps in mental health treatment. Therefore, these missed appointments do not demonstrate that Greenwade would have attended more mental health appointments if not for her mental health. In any event, even if Greenwade had attended these missed appointments, she still has not demonstrated that the ALJ erred in not including a limitation in her RFC reflecting work absences for medical appointments. As explained above, there is no evidence these appointments would cause Greenwade to miss a full day of work and there is no medical opinion in the record opining that future mental health appointments will be frequent and medically necessary.

In support of her position that the ALJ should have included absenteeism as a limitation in the RFC, Greenwade cites *Baker v. Apfel*, 159 F.3d 1140 (8th Cir. 1998). Doc. No. 19 at 14. In that case, the claimant suffered from migraines and presented evidence that he received sixty Demerol injections over a six-month period. *Baker*, 159 F.3d at 1146. Due to side effects of the medication, the claimant could not return to the workplace immediately after receiving injections and his treating physician opined that his impairments would cause him to miss "a great deal of work." *Id.* Unlike the claimant in *Baker*, Greenwade fails to demonstrate that her medical appointments would interfere

with her work schedule or that the treatments received would render her unable to return to work.

Greenwade also fails to distinguish her case from the many cases finding that past frequent medical appointments alone are not enough to warrant an RFC limitation related to work absences. Greenwade argues that the ALJ should have expressly considered an absenteeism limitation. It is true that in one case Judge Mahoney cited the ALJ "expressly considered whether to include an absenteeism limitation but declined to do so based upon the medical evidence of record." *Timms*, 2020 WL 247970, at *4. However, that case did not *require* such consideration and other Eighth Circuit cases on the issue have not discussed whether the ALJ explicitly explained his or her decision not to include an absenteeism limitation. *See Lane*, 2019 WL 952069, at *5; *Lara*, 2018 WL 1744534, at *3; *Miller*, 2017 WL 3642035, at *7; *Penney*, 2017 WL 3301228, at *8; *Jeffries*, 2017 WL 365439, at *7; *Morin*, 2015 WL 4928461, at *9; *Kittelson*, 2013 WL 2444030, at *12; *Assel*, 2010 WL 4628926, at *6; *Engel*, 2009 WL 2230921, at *4.

Greenwade cites no support for her proposition that an ALJ commits reversible error when he or she does not explicitly consider an absenteeism limitation that the record clearly does not support. Greenwade has the burden to prove her RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). As discussed above, Greenwade has not met her burden because she has not presented evidence that her medical appointments would require her to miss at least one entire workday each month. Therefore, the ALJ's decision not to include absenteeism in the RFC is supported by substantial evidence on the record as a whole. This objection is overruled.

## B. *Moderate Limitations in Concentration, Persistence or Pace*

Greenwade argues Judge Mahoney erred in finding that the RFC assessment and hypothetical to the VE adequately accounted for Greenwade's moderate limitations in concentration, persistence or pace. Doc. No. 24 at 2. Greenwade argues her moderate limitations are not adequately captured by the RFC's limitation to simple, routine tasks,

performed in a work environment free of fast-paced production requirements, and low stress work, or that which involves only simple work-related decisions and routine work place changes. *Id.* Greenwade also suggests that the RFC fails to include limitations related to the state agency psychologists' finding that she is moderately limited in her ability to work with the general public, set realistic goals independently and work in coordination or proximity of others without being distracted. *Id.* at 3.

An RFC and a hypothetical question must include and account for all of a claimant's impairments. *Newton v. Chater*, 92 F.3d 688, 694–95 (8th Cir. 1996). In *Newton*, the Eighth Circuit found that a limitation to simple work was insufficient to describe that the claimant often had deficiencies in concentration, persistence or pace. *Id.* However, a sufficient RFC and hypothetical question need not contain much more than the hypothetical at issue in *Newton*. *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017); *see also Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (finding a hypothetical sufficient that included "scantly more than what was included in the *Newton* hypothetical). The Eighth Circuit has found that a hypothetical limiting a claimant to "simple routine repetitive work, which does not require close attention to detail" and is no more "than a regular pace" adequately captures deficiencies in concentration, persistence or pace. *Brachtel*, 132 F.3d at 421. Moderate difficulties in concentration, persistence or pace have also been found to be adequately captured by an RFC limiting the complexity of tasks to those performed by rote and requiring that instructions be brief, simple, direct and concrete. *Scott*, 855 F.3d at 858. The Eighth Circuit has similarly found that an RFC assuming a claimant is able to do simple, repetitive and routine work adequately captures deficiencies in concentration, persistence or pace. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

The parties do not dispute that Greenwade's RFC assessment and the hypothetical to the VE are nearly identical and contain the same limitations. AR 22, 58–59. Greenwade also does not dispute the ALJ's finding that she has moderate limitations in concentration, persistence or pace. However, she does not present an alternative to the

language used in the RFC to describe the limitations. Instead, it appears that she argues the ALJ should have included verbatim in the RFC and hypothetical question that she has "moderation limitations in concentration, persistence or pace." *See* Doc. No. 19 at 11–12.

Here, the RFC assessment and hypothetical to the VE limited Greenwade to "simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line)" and "low stress work, which is defined as involving only simple, work-related decisions and routine work place changes." AR 22. Based on the record, this more than adequately accounts for the ALJ's finding of moderate limitations in concentration, persistence or pace. *See Wasinger v. Berryhill*, No. C16-00682, 2017 WL 2257357, at *2 (W.D. Mo. May 23, 2017) (RFC's limitation to of "simple, routine, repetitive work tasks, involving no fast-paced production requirements and only simple, work-related decisions, with few, if any workplace changes" adequately captures the plaintiff's moderate difficulties in concentration, persistence or pace); *Henderson v. Berryhill*, No. C15-1624, 2017 WL 747611, at *8 (E.D. Mo. Feb. 27, 2017) (limitation of "simple, routine work, with only limited interaction with supervisors, co-workers and the public" sufficiently accounts for the plaintiff's moderate limitations in concentration, persistence or pace). As the ALJ explained, "[t]he limitation to simple and routine tasks, free of fast pace production, and low stress work more than adequately accounts for any concentration or persistence related issues." AR 25. The limitation of work free of fast-paced production also accounts for any moderate limitations in pace. The ALJ was not required, as Greenwade argues, to include in the RFC and hypothetical to the VE verbatim that Greenwade has moderate limitations in concentration, persistence or pace in order to capture those limitations.

Although Greenwade does not argue that she has more than moderate limitations in concentration, persistence or pace, and fails to explain how the RFC could better reflect those limitations without listing them explicitly, I conclude that substantial evidence in

the record as a whole supports those limitations in the RFC capturing her moderate limitations in concentration, persistence or pace. The ALJ formulated the RFC on the basis of the entire record, including Greenwade's statements, her boyfriend's third-party function report, treatment records and reports by Dr. Lark and Dr. Becker. *See* AR 72–74, 98–100. In concluding that Greenwade has moderate limitations in concentration, persistence or pace, the ALJ considered her statements in her function report that she has difficulties with memory, concentration, understanding, handling stress or changes in routine and following instructions. AR 21 (citing AR 308–14). The ALJ also noted that she reported some difficulties with following written instructions and needing to reread them, but that she could follow spoken instructions well. AR 21 (citing AR 313).

The ALJ also cited to mental status examinations showing that Greenwade has presented at appointments as fully oriented with normal memory and cognition and at the vast majority of her appointments showed no signs of significant psychological abnormalities. AR 21 (citing AR 434, 436, 448, 451, 456, 760, 768). The ALJ also considered treatment notes showing consistently normal mood, affect and behavior. AR 25 (citing AR 427, 429, 432, 433, 461, 607, 618, 712, 714, 736, 750, 754). The ALJ further considered and gave partial weight to Dr. Lark's and Dr. Becker's reports. AR 26. Dr. Lark and Dr. Becker opined Greenwade no more than moderate restrictions and she is able to complete simple, repetitive tasks on a sustained basis, working best in a low-stress low-change environment requiring muted interaction with others. AR 26 (citing AR 72–74, 98–100). Dr. Lark and Dr. Becker concluded that Greenwade's "memory, attention, concentration, and pace are adequate for simple/routine tasks."[3] AR 74, 100.

Greenwade's argument that the RFC assessment failed to account for Dr. Lark's and Dr. Becker's findings that she is moderately limited in her ability to work with the

---

[3] While these reports were completed in early 2016, the ALJ accounted for later treatment records. *See, e.g.*, AR 24–26 (citing to AR 757–61).

general public, set realistic goals independently and work in coordination or proximity of others without being distracted is confusing. *See* Doc. No. 24 at 3. Dr. Lark and Dr. Becker found that Greenwade is *not* significantly limited in her ability to work in coordination with or in proximity to others without being distracted by them. AR 73, 98. They also found Greenwade is *not* significantly limited in her ability to set realistic goals or make plans independently of others. AR 74, 99. However, they did find moderate limitations in Greenwade's ability to interact appropriately with the general public. AR 73, 99. Even though the psychologists did not make all the findings that Greenwade alleges they made, the ALJ accounted for any limitations Greenwade may have in interacting with the public and others. The RFC provides that Greenwade is "limited to occasional and superficial interaction with supervisors; is limited to occasional transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should largely deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork requirement." AR 22.

I find the RFC's limitations in interacting with the public, supervisors and others are supported by substantial evidence. The ALJ noted that Greenwade has reported difficulties getting along with others, anger control issues and a lack of social activities. AR 21. However, Greenwade also reported she has the ability to shop in public, talk over the phone with others daily and travel alone. AR 21 (citing AR 311–14). She also reported that she has never been fired or laid off from a job due to problems with getting along with others. AR 21 (citing AR 311–14). There are also no documented panic attacks in the record and only a few treatment records indicate she reported difficulties with being in public and near others.[4] *See* AR 415–16, 417–19, 447–49. Treatment

---

[4] While Greenwade testified that she has difficulties leaving her home (AR 54), I found above that substantial evidence on the record as a whole supports the ALJ's decisions to discount this testimony. To the extent the ALJ discounted other testimony from Greenwade, she has not

providers have never observed her as antagonistic, hostile, uncooperative or overtly anxious. Instead, they have consistently found her to be cooperative during appointments and exhibiting normal behavior. AR 21 (citing AR 434, 436, 448, 451, 456, 760, 768); *see also* AR 368, 409, 425, 426, 427, 432, 463, 522, 581, 593, 597, 620, 645, 652, 712, 736, 747, 754, 912, 962, 978, 993–94, 1027, 1041, 1050, 1067, 1073.

The RFC appropriately captures Greenwade's moderate limitations in concentration, persistence or pace and her limitations in interacting with others. This objection is overruled.

## C.    *Other Issues*

Because the parties have not objected to the portions of the R&R addressing other issues raised by Greenwade in her briefing, I have reviewed those portions for clear error. Judge Mahoney applied the appropriate legal standards in considering whether the ALJ erred in failing to include fibromyalgia and back pain as a severe impairment at Step Two of the disability determination. Judge Mahoney also appropriately considered whether the ALJ should have analyzed Greenwade's impairments under Listing 1.04 (disorders of the spine) and Listing 12.15 (trauma-and-stressor-related disorders). Judge Mahoney properly considered the weight the ALJ assigned to Greenwade's subjective statements and the third-party function report submitted by Greenwade's boyfriend. Finally, Judge Mahoney applied the proper legal standards in determining whether the ALJ failed to resolve inconsistencies between the VE's testimony and the DOT. Based on my review of the record, I find no error—clear or otherwise—in Judge Mahoney's recommendation on these issues.

_____

objected to Judge Mahoney's R&R finding that substantial evidence supports the ALJ's decision and I find no clear error in Judge Mahoney's analysis.

### V. CONCLUSION

For the reasons set forth herein:

1.      Greenwade's objections (Doc. No. 24) to the Report and Recommendation (Doc. No. 23) are **overruled**.

2.      I **accept** the Report and Recommendation (Doc. No. 23) **without modification**.   *See* 28 U.S.C. § 636(b)(1).

3.      Pursuant to Judge Mahoney's recommendation:

a.      The Commissioner's determination that Greenwade was not disabled is **affirmed**.

b.      Judgment shall enter in favor of the Commissioner and against Greenwade.

**IT IS SO ORDERED.**

**DATED** this 20th day of March, 2020.

_____
Leonard T. Strand, Chief Judge